**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

ANTHONY LAVENDER,

Plaintiff,

v. CIVIL ACTION NO. 3:06-1032

WEST VIRGINIA REGIONAL JAIL AND CORRECTIONAL FACILITY AUTHORITY, LARRY PARSONS, ANDREW KEENER, JEREMY VARNEY, ERIC FETTY AND WILLIAM WILEY,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are motions to dismiss filed by Defendants The West Virginia Regional Jail and Correctional Facility Authority ("Regional Jail Authority") and Larry Parsons, the Administrator of the Western Regional Jail, and Defendants Andrew Keener, Jeremy Varney, Eric Fetty, and William Wiley (collectively referred to as "the Correctional Officers"). For the following reasons, the Court **GRANTS**, in part, and **DENIES**, in part, Defendants' motions. [Doc. Nos. 6, 8, & 39].

**I.**
**FACTS**

In his First Amended Complaint, Plaintiff Anthony Lavender asserts he was an inmate at the Western Regional Jail when he was attacked by the named Correctional Officers. *First Amended Complaint*, at ¶ 9. Plaintiff claims the incident occurred after Defendant Varney spilled water when he was removing Plaintiff's breakfast tray from his cell. *Id*. at ¶ 10. Plaintiff states that Defendant Varney left the cell and returned with the other Correctional Officers, including

Defendant Keener, who is believed to be a supervisor. *Id*. at ¶¶ 11-12.  Plaintiff alleges that Defendant Keener verbally abused and threatened him for trying to mess up Defendant Varney's uniform. *Id*. at ¶ 12.  Plaintiff also claims that the other Correctional Officers harassed and ridiculed him. *Id*.  Plaintiff asserts he was then willfully, wantonly, and maliciously attacked. *Id*. at ¶¶ 13 & 15.  Afterwards, he says he was "taken to the general booking area and strapped into a chair . . . ." *Id*. at ¶ 14.  Plaintiff claims that despite suffering severe injuries from the brutal attack, he "was denied prompt and appropriate medical care, and only received perfunctory treatment within the facility's clinic." *Id*. at ¶ 15. Approximately seven days later, Plaintiff states he was released from the facility and he went to an emergency room where he was diagnosed with numerous injuries, including "brain damage, left facial numbness and nerve palsy, impaired speech and fractures of the left L-2 and L-3 transverse processes of the lumbar spine." *Id*. at ¶¶ 16-17.

In Count 1 of his First Amended Complaint, Plaintiff claims that he was deprived of his civil rights pursuant to 42 U.S.C. § 1983.  Specifically, he asserts that the Correctional Officers conspired to violate his civil rights and "were acting under color of law and pursuant to policy or custom of the Regional Jail Authority." *Id*. at ¶¶ 20-21.  Plaintiff states that "Defendants Larry Parsons and the Regional Jail Authority failed to exercise reasonable diligence in the training and supervision of the correctional officers, and were grossly negligent in failing to prevent the malicious attack." *Id*. at ¶ 22.  Plaintiff further alleges that his constitutional rights were violated as a result of their negligent and reckless failure "to instruct, supervise, control, and discipline" the Correctional Officers regarding Plaintiff's rights. *Id*. at ¶ 23.  In addition, Plaintiff claims that Defendants Parsons and the Regional Jail Authority willfully and wantonly disregarded the safety

of inmates, including himself, "and either acquiesced in the unreasonable and unlawful use of force or created an environment conducive to attacks on inmates. *Id*. at ¶ 24.

In Count II, Plaintiff asserts a claim of negligence against Defendants. First, he claims that Defendant Parsons and the Regional Jail Authority "negligently, carelessly and recklessly failed to exercise reasonable care in . . . protect[ing]" him and in "the supervision, training and control of the Defendant Officers." *Id*. at 27. Second, Plaintiff alleges that "[t]he Defendant Officers negligently and recklessly breached their duties to protect . . . [his] health and welfare . . ., and by their acts and omissions, negligently and recklessly caused the aforesaid injuries." *Id*. at ¶ 28. In Count II-A,[1] Plaintiff claims the "negligent, careless, and reckless manner" in which Defendants acted has caused him to suffer "emotional and physical distress, humiliation, mental anguish, and embarrassment." *Id*. at ¶¶ 31-32.

In Count III, Plaintiff makes a claim for intentional infliction of emotional distress. Plaintiff asserts that Defendants actions were "outrageous, malicious and intentional . . . ." *Id*. at ¶ 31. As a result, he claims to have suffered "severe emotional and physical distress, humiliation, mental anguish, and embarrassment." *Id*. at ¶ 32.[2] Similarly, in Count IV, Plaintiff asserts that the conduct was so outrageous that punitive damages are warranted.

[1]Plaintiff inadvertently has two counts labeled "Count II." For clarity purposes, the Court will refer to the second count as Count II-A.

[2]None of Defendants make any specific argument why this claim should be dismissed. Therefore, the Court will not address this count.

In their motions to dismiss, Defendants Parsons and the Regional Jail Authority have joined in one motion, while the Correctional Officers have joined in another. To the extent they overlap, the Court will consider the motions together.

## II.
## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the United States Supreme Court recently disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which has long been used to evaluate complaints subject to 12(b)(6) motions. 127 S. Ct. at 1969. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 1965 (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 1966 (internal quotation marks and citations omitted). Two weeks after issuing its decision in *Twombly*, the Court emphasized in *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" 127 S. Ct. at 2200 (quoting *Twombly*, 127 S. Ct. at 1964 (other citations and some internal quotations omitted). Thus, "a universal standard of heightened fact pleading" is not required, rather it is "a flexible

'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143,157-58 (2d Cir. 2007) (italics original). It is under this revised standard that the Court must evaluate Plaintiff's First Amended Complaint in light of Defendants' 12(b)(6) motions.

## III.
## DISCUSSION

### A.
### Motion to Dismiss § 1983 Action Against the Regional Jail Authority and Larry Parsons

Plaintiff's first claim against Defendants is for alleged violations of 42 U.S.C. § 1983. The parties agree that pursuant to *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. at 71. In his Response to Defendants Parsons and the Regional Jail Authority's motion to dismiss, Plaintiff concedes that, under this rule of law, the Regional Jail Authority may not be sued under § 1983. Therefore, the Court **GRANTS** the Regional Jail Authorities' motion in this regard. *See Roach v. Burke*, 825 F. Supp. 116, 118 (N.D. W. Va. 1993) (holding that the West Virginia Regional Jail Authority and Correctional Facility is not a person amenable to suit under § 1983). However, the United States Supreme Court has stated that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of the acts." *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

Here, Plaintiff claims that he is suing Defendant Parsons in his individual capacity despite the fact he did not explicitly mention the capacity in which he is suing him in his First

Amended Complaint. Although specifically identifying the capacity of a defendant is preferable, the Fourth Circuit held in *Biggs v. Meadows*, 66 F.3d 56 (1995), "that a plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." 66 F.3d at 60 & n.3. When the specific capacity is not alleged, the Fourth Circuit held "the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id*. at 61. To aid in this process, the Fourth Circuit identified several factors to consider: (1) it may be indicative that a suit was brought against a defendant in his or her personal capacity if the plaintiff fails to allege the defendant's actions were "in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the fact of the complaint[;]" (2) likewise, it may be a suit brought against a state actor personally if the plaintiff seeks compensatory or punitive damages, which are not available in official capacity suits; and (3) "[t]he nature of any defenses raised in response to the complaint is an additional relevant factor. Because qualified immunity is available only in a personal capacity suit, the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally." *Id*. (citations omitted). In addition, throughout this process, courts should keep in mind "whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id*.

Here, there is no claim in the Amended Complaint that Defendant Parsons was acting pursuant to a governmental policy or custom. In addition, Plaintiff has requested an award of both compensatory and punitive damages. Finally, in the Regional Jail Authority and Defendant Parsons' Answer and motion to dismiss, Defendant Parsons has asserted the defense of qualified immunity.

The Court finds that these factors clearly weigh in favor of determining that Defendant Parsons is being sued in his personal capacity. However, Defendant Parsons argues he is being sued in his official capacity because the Amended Complaint focuses on his administrative and supervisory capacities and the doctrine of *respondeat superior*. Although the Court finds that these allegations are not sufficient to outweigh the factors indicating Defendant Parsons has been sued in his personal capacity, the Court holds that Plaintiff cannot pursue § 1983 damages against Defendant Parsons in his personal capacity based upon the doctrine of *respondeat superior*.

It is well established that "[i]n order for an individual to be liable under § 1983, it must be "'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (citations omitted).[3] For a supervisor to be held personally liable under § 1983, a plaintiff must allege more than a mere "failure adequately to

---

[3]*See also Fisher v. Overton*, 124 Fed. Appx. 325, 328 (6th Cir. 2005) (holding "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. The doctrine of respondeat superior does not apply in a Section 1983 lawsuit to impute liability on the supervisory personnel unless it is shown 'that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it'" (citations omitted)); *Bolin v. Black*, 875 F.2d 1343, 1347 (8th Cir. 1989) ("It is well settled that the doctrine of respondeat superior is insufficient to allow recovery in a § 1983 action" (citations omitted)); *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 383 (7th Cir. 1988) (stating "[a]n official who is sued in his or her personal capacity can only be held liable for his or her individual wrongdoing. Section 1983 does not recognize a doctrine of superior's liability" (citation omitted)); *Brothers v. County of Summit*, No. 5:03 CV 1002, 2007 WL 1567662, at *11 (N.D. Ohio May 25, 2007) (holding "[j]ust as the county could not be held liable for the actions of its employees under *respondeat superior*, a government supervisory employee . . . cannot be held liable when sued in an individual or personal capacity for the actions of employees over whom there was supervisory authority. Liability for supervision exists under § 1983 only when 'the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it,' or 'at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate'" (citations omitted)).

supervise or control any conduct that directly caused the specific deprivation charged." *Davis v. Dep't of Soc. Serv. of Baltimore County*, 941 F.2d 1206, *5 (4th Cir. 1991) (per curiam) (internal quotation and citation omitted). Typically, supervisory liability cannot be established by pointing to a single, isolated event. *Id*. (citing *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)).

In this case, there is no allegation that Defendant Parsons in anyway participated in the alleged attack or, for that matter, was even present when the alleged attack occurred. In addition, it is clear that Defendant Parsons cannot be held liable for the Correctional Officers' actions merely because he is their supervisor. However, upon review of the § 1983 claim, the Court finds Plaintiff has alleged liability based upon more than the doctrine of *respondeat superior*. For instance, in paragraph 24 of the First Amended Complaint, Plaintiff alleges that Defendant Parsons "acted with willful and wanton disregard" for Plaintiff and the other inmates' safety and he "either acquiesced in the unreasonable and unlawful use of force or created an environment conducive to attacks on inmates." *First Amended Complaint*, at ¶ 24. Being mindful that this claim is being challenged on a motion to dismiss and not one for summary judgment, the Court finds Plaintiff has at least stated a plausible claim against Defendant Parsons. Therefore, the Court **DENIES** Defendant Parson's motion to dismiss the § 1983 action against him, but the Court cautions Plaintiff that it must produce sufficient evidence to prove Defendant Parson's liability beyond a theory of *respondeat superior*.

**B.**
**Motion to Dismiss the § 1983 Action Against the Correctional Officers**

The Correctional Officers also argue that the § 1983 claim should be dismissed against them. In his First Amended Complaint, Plaintiff asserts that the Correctional Officers acted

in concert with one another in conspiring to violate Plaintiff's civil rights and their acts and omissions deprived him "of his rights, privileges and immunities secured by the Constitutions and laws of the United States and West Virginia." *First Amended Complaint*, ¶ 20. Plaintiff further contends that the Correctional "Officers were acting under color of law and pursuant to policy or custom of the Regional Jail Authority." *Id*. at ¶21.

As with Defendant Parsons, Plaintiff has failed to expressly identify whether he is suing the Correctional Officers in their individual or official capacities. In considering the factors outlined by the Fourth Circuit in *Biggs*, the Court finds this question is a closer call than existed with Defendant Parsons. Unlike the claims against Defendant Parsons, Plaintiff has alleged the Correctional Officers were acting in accordance with a policy or custom of the Regional Jail Authority, which weighs in favor of finding that the Correctional Officers are being sued in their official capacities. On the other hand, Plaintiff seeks compensatory and punitive damages and the Correctional Officers argue they are entitled to qualified immunity in their motion to dismiss, which weighs in favor of finding the Correctional Officers are being sued in their individual capacities. Although competing factors exist, upon consideration of the overall claims in the First Amended Complaint, the Court finds the balance tips in favor of personal liability and this finding is consistent with a fair assessment of Plaintiff's intent.

Having decided the Correctional Officers are being sued in their personal capacities under § 1983, the next question to resolve is whether they are entitled to qualified immunity. Under the doctrine of qualified immunity, governmental officials performing their discretionary duties "are

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a claim for excessive force is made, courts must conduct a two-step sequential process to make this determination. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The "threshold question" for courts to decide is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Id*. at 201. If such a showing is not made, the plaintiff cannot prevail and the analysis ends. *Id*. If, however, the alleged facts are sufficient to demonstrate a violation of a constitutional right, the court must proceed to the second step of the analysis. "[T]he next, sequential step is to ask whether the right was clearly established" at the time of the event. *Id*. If not, the defendant is entitled to qualified immunity. If the right was clearly established, the case should proceed. Thus, in sum, in order for Plaintiff to defeat the Correctional Officers' motion to dismiss, he must show (1) a genuine factual issue as to whether the Correctional Officers violated his constitutional rights, and (2) the rights allegedly violated were clearly established when the event occurred.

Turning to the first step of the process, the United States Supreme Court has held that "[i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). At the time Plaintiff alleges he was beaten, he was a pretrial detainee. "[E]xcessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment[.]" *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997) (en banc).

To succeed on this claim, Plaintiff must first demonstrate that the Correctional Officers "'inflicted unnecessary and wanton pain and suffering'" upon him. *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). To make this determination, the court must focus on "whether the force applied was 'in a good faith effort to maintain or restore discipline or [was applied] maliciously and sadistically for the very purpose of causing harm.'" *Id*. (quoting *Whitley*, 475 U.S. at 320-21). In addition, Plaintiff must show that the excessive force alleged caused more than *de minimis* injuries or that "'the force used [is] of a sort repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury.'" *Id*. at 483-84 (quoting *Norman v. Taylor*, 25 F.3d 1259, 1263 n.4 (4th Cir. 1994) (en banc), and citing *Riley*, 115 F.3d at 1166)).

Accepting Plaintiff's allegations as true, the Court has little difficulty finding that he meets this first step. In essence, Plaintiff claims that the incident was precipitated by Defendant Varney spilling water on himself as he removed Plaintiff's breakfast tray from his cell. Defendant Varney left the cell and then returned with the other officers who willfully, wantonly, and maliciously attacked Plaintiff, causing him serious and permanent injuries including "brain damage, left facial numbness and nerve palsy, impaired speech and fractures of the left L-2 and L-3 transverse processes of the lumbar spine." *First Amended Complaint*, ¶ 17. Assuming, as this Court must, that Plaintiff's version of the facts is true for purposes of the motion to dismiss, the Correctional Officers' actions far exceeded "a good faith effort to maintain or restore discipline" and their attack on Plaintiff was malicious and caused more than *de minimis* injuries.

Turning to the second step, the Court must determine whether the right to be free from excessive force was clearly established at the time of the alleged event. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "If the law did not put the officer on notice that his conduct would be clearly unlawful," qualified immunity exists. *Saucier*, 533 U.S. at 202.

Here, the Court finds it was clearly established at the time of the alleged violation that reasonable correctional officers would understand they could not maliciously attack a pretrial detainee under the circumstances alleged by Plaintiff in this case. Although the Correctional Officers may dispute the factual allegations made by Plaintiff and argue their actions were reasonable under their version of events, discovery is first necessary to determine what actually happened. Therefore, the Court finds the issue is inappropriate for resolution on a motion to dismiss, and **DENIES** the Correctional Officers' motion to dismiss the § 1983 action against them.

**C.**
**Motions to Dismiss Negligence Claims**

All Defendants next claim that Plaintiff's negligence claims against them must be dismissed because they are entitled to immunity under the West Virginia Supreme Court's decision in *Clark v. Dunn*, 465 S.E.2d 374 (W. Va. 1995). Plaintiff asserts that Defendant's reliance upon *Clark* is misplaced and Defendants' motions are premature because discovery is required before the question of immunity can be resolved. For the following reasons, the Court agrees with Defendants and dismisses Counts II and II-A of the First Amended Complaint.

In *Clark*, the plaintiff alleged he was negligently shot by Conservation Officer Terry Dunn of the West Virginia Department of Natural Resources (DNR). 465 S.E.2d at 376. The lower court determined on summary judgment that both Officer Dunn and the DNR were entitled to qualified immunity. *Id*. The plaintiff appealed, and the West Virginia Supreme Court agreed with the lower court.

In analyzing the immunity issue, the court first noted that the DNR is a State department or agency and not a political subdivision under the West Virginia Code and that Officer Dunn, as an employee of the DNR, is a public official of the State. *Id*. at 377*; see* W. Va. Code § 29-12A-3(c) & (e).[4] Pursuant to Section 35, Article VI of the West Virginia Constitution, the State is

---

[4]West Virginia Code § 29-12A-3(c) and (e) provide:

> (c) "Political subdivision" means any county commission, municipality and county board of education; any separate corporation or instrumentality established by one or more counties or municipalities, as permitted by law; any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities or towns; a combined city-county health department created pursuant to article two, chapter sixteen of this code; public service districts; and other instrumentalities including, but not limited to, volunteer fire departments and emergency service organizations as recognized by an appropriate public body and authorized by law to perform a government function: Provided, That hospitals of a political subdivision and their employees are expressly excluded from the provisions of this article.

(continued...)

vested with constitutional or sovereign immunity which extends to the discretionary duties and functions of the DNR. *Id*. at 378 (citations omitted). Although constitutional immunity may not be waived, the court recognized an exception to immunity when insurance coverage is available pursuant to West Virginia Code § 29-12-5(a). This section mandates that the State Board of Risk and Insurance Management (BRIM) acquire insurance and that the insurer may not rely upon State constitutional immunity to defend against claims. *Id*.[5] (quoting Syl. Pt. 1, *Eggleston v. West Virginia*

---

[4](...continued)

* * *

> (e) "State" means the state of West Virginia, including, but not limited to, the Legislature, the supreme court of appeals, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, colleges, and universities, institutions, and other instrumentalities of the state of West Virginia. "State" does not include political subdivisions.

W. Va. Code § 29-12A-3(c) & (e).

[5]West Virginia Code § 29-12-5(a) states, in relevant part:

> (a)(1) The board has, without limitation and in its discretion as it seems necessary for the benefit of the insurance program, general supervision and control over the insurance of state property, activities and responsibilities . . . .
>
> (4) Any policy of insurance purchased or contracted for by the board shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the State of West Virginia against claims or suits: Provided, That nothing herein shall bar a state agency or state instrumentality from relying on the constitutional immunity granted the State of West Virginia against

(continued...)

*Dep't of Highways*, 429 S.E.2d 636 (1993)).  Immunity is only relaxed to the extent that insurance coverage is available. *Id*. at 379 (quoting *State ex rel. West Virginia Dep't of Transp., Highways Div. v. Madden*, 453 S.E.2d 331, 334 (1994)).

In *Clark*, however, the DNR was not covered by the provisions of West Virginia Code § 29-12A-1 *et seq.*[6] *Id*. at 380.  Therefore, the court looked beyond constitutional immunity to the doctrines of qualified or official immunity to see if they applied.  In this regard, the court relied upon its decision in *Goines v. James*, 433 S.E.2d 572 (W. Va. 1993), in which the court held in rejecting the plaintiffs' § 1983 action that:

> Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does.

---

[5](...continued)
> claims or suits arising from or out of any state property, activity or responsibility not covered by a policy or policies of insurance:  Provided, however, That nothing herein shall bar the insurer of political subdivisions from relying upon any statutory immunity granted such political subdivisions against claims or suits.

W. Va. Code § 29-12-5(a), in part.

[6]West Virginia Code § 29-12A-1 *et seq.* is referred to as the West Virginia Governmental Tort Claims and Insurance Reform Act.

*Id*. at 379 (quoting Syl. Pt. 1, *Goines* (quoting the syllabus of *Bennett v. Coffman*, 361 S.E.2d 465 (1987)). In the syllabus of *State v. Chase Securities, Inc.*, 424 S.E.2d 591 (W. Va. 1992), the court expanded immunity beyond § 1983 cases by holding, in part:

> A public executive official who is acting within the scope of his authority and is not covered by the provisions of W. Va. Code, 29-12A-1, *et seq*., is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known. There is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive.

Syl. Pt., *Chase Securities*, in part. In addition, the court reaffirmed its decision in *City of Fairmont v. Hawkins*, 304 S.E.2d 824, 829 n.7 (1983),[7] by holding that in the performance of discretionary duties:

> [I]f a public officer, other than a judicial officer, is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby. This rule is presently limited to public officers acting in good faith, without malice and without corruption."

Syl. Pt. 4, *Clark*.

Based upon this prior case law, the court in *Clark* concluded in Syllabus Point 6 that when a State agency is not covered by the provisions of West Virginia Code § 29-12A-1 *et seq*. and

[7] Other quotations omitted.

there is no insurance policy coverage, "the doctrine of qualified or official immunity bars a claim of mere negligence against . . . [the] agency . . . and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer." Syl. Pt. 6, *Clark*. Thus, as insurance coverage was not available to the DNR or Officer Dunn, the court held that the doctrine of qualified or official immunity barred the plaintiff from pursuing a mere negligence claim against the DNR or Officer Dunn, who performed discretionary judgments, decisions, and actions within the scope of his employment. *Id*. at 380-81. The Court further noted that Officer Dunn's actions "did not give rise to a deprivation of a right clearly established by statutory law or constitutional rights." *Id*. at 380.

In this case, the Correctional Officers attached a copy of the relevant liability insurance policy.[8] Significantly, however, the policy expressly provides on the first page that "[i]t is a condition precedent of coverage under the policies that the additional insured does not waive any statutory or common law immunity conferred upon it."[9] *Certificate of Liability Insurance*, at 1.

---

[8]This Court may consider documents that are integral to the complaint and authentic without converting the motion to one for summary judgment. *See Collins v. Red Roof Inns, Inc.*, 248 F. Supp.2d 512, 516 (S.D. W. Va. 2003) (holding that "when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment" (internal quotation marks and citation omitted)); *Secretary of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (stating that upon review of a 12(b)(6) motion, it "may consider documents attached to the complaint, . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" (citation omitted)). As the insurance policy at issue here is integral to the First Amended Complaint and Plaintiff has not disputed its authenticity, the Court finds it can look at the policy without considering Defendant's motion as one for summary judgment.

[9]The "additional insured" is listed at the top of the page as The Regional Jail & Correctional (continued...)

Thus, although there is insurance coverage available, this case is nevertheless analogous to *Clark* because there is no waiver of statutory or common law immunity. As Counts II and II-A of the First Amended Complaint are mere negligence claims, Defendants are clearly entitled to immunity against those claims.

Plaintiff argues, however, that *Clark* is premised upon the public duty doctrine and he falls within the exception to the public duty doctrine created by the special relationship he had with Defendants. Given this special relationship, Plaintiff asserts that his negligence claims are not barred. In considering this issue, the Court observes that immunity and the public duty doctrine, with the special relationship exception, are distinct concepts. As explained by the West Virginia Supreme Court in *Holsten v. Massey*, 490 S.E.2d 864 (W. Va. 1997), "'[t]he public duty doctrine is a principle independent of the doctrine of governmental immunity, although [we have recognized that] in practice it achieves much the same result.'" 490 S.E.2d at 870 (quoting *Benson v. Kutsch*, 380 S.E.2d 36, 37 (W. Va. 1989)). The public duty doctrine basically provides that "a breach of a general duty owed by the local governmental entity to the public as a whole, such as to provide police protection, is not actionable." *Id*. at 869. The special relationship exception to this doctrine applies when the public body owes a duty to a private person, which is "in addition to and apart from any duty owed the public in general." *Parkulo v. West Virginia Bd. of Prob. and Parole*, 483 S.E.2d 507, 519 (W. Va. 1997). The Court finds that there is no mention of either the public duty doctrine or the special relationship doctrine in *Clark*, but *Clark* speaks very clearly on the issue of qualified

---

[9](...continued)
Authority. *Id*.

and official immunity for negligent acts. Thus, even if Plaintiff could successfully argue that his situation fits within the special relationship exception, he is still left with negligence claims in Counts II and II-A, which are barred by immunity under *Clark*. Therefore, the Court finds that Counts II and II-A must be dismissed against all Defendants.

**D.**
**Motion to Dismiss**
**Punitive Damage Claim**

The Correctional Officers further assert that Plaintiff may not recover punitive damages under West Virginia law and, therefore, his claim must be dismissed. In 2002, the West Virginia Legislature passed what is known as the "Procedures for Certain Actions Against the State," which was codified in Article 17 of Chapter 55 of the West Virginia Code. In Section 1 of the Act, the Legislature declared "that protection of the public interest is best served by clarifying that no government agency may be subject to awards of punitive damages in any judicial proceeding." W. Va. Code § 55-17-1, in part. To this end, the Legislature provided in West Virginia Code § 55-17-4(3) that "[n]otwithstanding any other provisions of law to the contrary: . . . No government agency may be ordered to pay punitive damages in any action." W. Va. Code § 55-17-4(3). A "government agency" is defined in West Virginia Code § 55-17-2(2) as "a constitutional officer or other public official named as a defendant or respondent *in his or her official capacity*, or a department, division, bureau, board, commission or other agency or instrumentality within the executive branch of state government that has the capacity to sue or be sued." W. Va. Code § 55-17-2(2) (emphasis added). As this Court has determined that the Correctional Officers in this case are being sued in their individual capacities and not their official capacities, the Court finds punitive damages are not prohibited under these sections and, therefore, the Court **DENIES** the Correctional

Officers' motion to dismiss this claim. *See Clark*, 465 S.E.2d at 377 (stating that Officer Dunn, as an employee of a State department or agency, was "a law enforcement officer and public official of the State").

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** the Regional Jail Authority's motion to dismiss the § 1983 claim against it, **DENIES** the like motions of Defendant Parsons and the Correctional Officers, **GRANTS** all Defendants' motions to dismiss the negligence claims in Counts II and II-A, and **DENIES** the Correctional Officers' motion to dismiss Plaintiff's claim for punitive damages.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: February 4, 2008

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE